IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| B&C TELEPHONE, INC., a/k/a B+C TELEPHONE, INC. and B+C TELECOM, a Washington Corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>JOHN BYINGTON and SHAWNEE BYINGTON, husband and wife, d/b/a "CABLE-PRO,"<br><br>        Defendants. | Case No. CV-06-168-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it B&C's motion for summary judgment and two motions to strike. The Court heard oral argument on May 22, 2007, and took the motions under advisement. For the reasons expressed below, the Court will deny the motion for summary judgment and deem moot the two motions to strike.

## FACTUAL SUMMARY

Defendant Byington worked as a salesman for plaintiff B&C. He entered into two agreements with B&C: (1) a Non-Disclosure Agreement, and (2) a Sales

**Memorandum Decision and Order – Page 1**

Compensation Plan. Byington signed the Non-Disclosure Agreement in September of 2005. It states that Byington "agrees to hold confidential and not disclose . . . nor use for any purpose other than Employee's work for B&C Telephone, . . . customer lists, customer contact information . . . or information . . . relating to the business, services, clients or employees of B&C Telephone . . . ."

Byington signed the Compensation Plan in February of 2006, about five months after the Non-Disclosure Agreement. The Compensation Plan states that it "supersedes any and all . . . arrangements written or verbal (does not apply to Employee Handbook) that have been in place." It anti-disclosure provisions are narrower than the Non-Disclosure Agreement, applying only to the *disclosure* of information, not to its *use*.

The Compensation also plan requires that Byington "devote [his] entire productive time and energies exclusively to the sale of the products and services of [B&C] . . . ." Furthermore, it provides that Byington "will not engage in a related telecommunications business for [himself] with any other person, firm, or corporation, and that [he] will give [his] best efforts and skill into developing the best interest and welfare of the company." *See Exhibit B to B&C's Complaint.*

Byington signed the Compensation Agreement in February of 2006, and the Non-Disclosure Agreement in September of 2005. Earlier – in 2000 – he had

**Memorandum Decision and Order – Page 2**

started his own business known as Cable Pro.  *See Byington Affidavit* at ¶ 9, p. 4.  B&C alleges that Byington breached the Non-Disclosure Agreement by using confidential information to pursue clients for Cable Pro.  B&C also alleges that Byington violated the Compensation Agreement through his work for Cable Pro that took business away from B&C.

B&C brought this suit for breach of contract.  B&C seeks summary judgment that Byington breached these provisions and is thereby obligated to pay $16,264.12 in damages.[1]  B&C calculates its damages by computing the profits it lost from Byington's work for three clients: (1) Teleco; (2) Department of Health and Human Services, Indian Health Center; and (3) Le Ritz Hotel.  B&C established that it would have earned a profit of at least 40% of the sales price of the products and 40% of the price of labor charged.  *See Affidavit of Hall*.

## ANALYSIS

There are two central issues raised by B&C's summary judgment motion.  Was Cable Pro a competitor of B&C?  Did Byington use his best efforts on B&C's behalf?

The evidence must be viewed in the light most favorable to the non-moving

---

[1] B&C bases jurisdiction on diversity.  Although B&C now seeks far less than the jurisdictional limit of $75,000 in damages, no party has alleged that the amount in controversy was less than the limit when the case was filed.

**Memorandum Decision and Order – Page 3**

party, and the Court must not make credibility findings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 255 (1986). Direct testimony of the non-movant – Byington in this case – must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Byington has testified that his direct supervisor, Matt Dopko, advised him that B&C was not going to do any data cabling in the Idaho Falls area. *See Byington Affidavit* at ¶ 13, p. 5.[2] Byington states that he was "never told that B&C desired to bid on data cabling jobs or provide other data cabling services in the Idaho Falls area." *Id*. Byington also alleges that B&C did not provide IT networking services in Idaho Falls, and that Dopko told him to "team up with someone locally." *Id*. at ¶ 19, p. 7. However, Dopko did not want Byington teaming up with another company that competed with B&C's telephone services. *Id*. at ¶ 8, p. 3.

Byington alleges that he started Cable Pro to fill this lack of data cabling and IT network services. This allowed him, he claims, to offer a complete package of services very appealing to customers of B&C: "[T]he benefit to me and to B&C [from Cable Pro] was that we were able to provide customers and potential customers with complete services, at a better price and limit the competition for the

---

[2] This paragraph of Byington's brief was not challenged in B&C's motion to strike.

**Memorandum Decision and Order – Page 4**

services I was attempting to sell on behalf of B&C." *Id*. at ¶ 35, p. 11.

For purposes of resolving this summary judgment motion, the Court must believe Byington's assertion that he closed sales for B&C because he was able to offer customers the additional services of Cable Pro for matters that B&C did not provide. While there is contrary evidence, the Court cannot weigh and balance that evidence on summary judgment. If a jury believes Byington's evidence over that of B&C, the jury could reasonably conclude that Byington's work with Cable Pro was beneficial to B&C and that he was using his best efforts on behalf of B&C and not competing with them.

For these reasons, the Court finds questions of fact on whether Byington breached the provisions of the Compensation Plan. With regard to the Non-Disclosure Agreement, Byington has testified that he did not disclose or use any confidential information for purposes unrelated to B&C. *Id*. at ¶ 31, p. 11; *see also Byington Deposition* at p. 193. He also alleges that the Compensation Agreement, signed on February 1, 2006, superseded the Non-Disclosure Agreement, signed in 2005. *See Counterclaim* at ¶ 8. The new agreement only prohibited the disclosure of confidential information, not its use. B&C has not come forward with evidence that Byington disclosed confidential information to anyone. On this record, there are genuine issues of material fact that preclude summary judgment on this issue.

**Memorandum Decision and Order – Page 5**

B&C also seeks summary judgment on Byington's counterclaim. The Court likewise finds questions of fact that preclude summary judgment on these issues. For all these reasons, B&C's motion for summary judgment will be denied. Because the Court did not rely on any of the contested material challenged in the two motions to strike, the Court will deem those motions moot.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment (Docket No. 31) is DENIED.

IT IS FURTHER ORDERED, that the motions to strike (Docket Nos. 38 and 44) are DEEMED MOOT.

IT IS FURTHER ORDERED, that the parties shall immediately contact the Court's Clerk, LaDonna Garcia (208-334-9021) to schedule a hearing to obtain a trial date.



DATED: **May 23, 2007**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 7**